809 So.2d 258 (2001)
Robert D. McGEHEE
v.
CITY/PARISH OF EAST BATON ROUGE and Municipal Fire And Police Civil Service Board.
No. 2000 CA 1058.
Court of Appeal of Louisiana, First Circuit.
September 12, 2001.
*259 Kathryn Wyble, Baton Rouge, for Plaintiff/Appellant, Robert D. McGehee.
Joseph N. Lotwick, Baton Rouge, for Defendant/Appellee, Baton Rouge Police Department.
David A. Hamilton, Baton Rouge, for Defendant/Appellee, Municipal Fire and Police Civil Service Board.
Before: GONZALES, PETTIGREW, SEXTON, JJ.[1]
SEXTON, Judge.
This is an appeal by a police officer from a disciplinary action. We affirm.

FACTS AND PROCEDURAL HISTORY
Robert D. McGehee was a sergeant with the City of Baton Rouge Police Department ("BRPD") at the time of the pertinent events. On August 21, 1998, BRPD Chief Greg Phares directed an interdepartmental memorandum to Sergeant McGehee, advising him that because of his unprofessional conduct toward Corporal Pamela Anderson, which could be characterized as sexual harassment, official disciplinary action was being considered. Sergeant McGehee was notified of a pre-disciplinary hearing to be held in Chief Phares' office on September 3, 1998. On October 27, 1998, Chief Phares notified Sergeant McGehee of his decision to suspend him for three days, finding Corporal Anderson's account of the allegedly sexually offensive joke as credible, and rejecting Sergeant McGehee's innocuous version.
Plaintiff appealed his suspension to the Municipal Fire and Police Civil Service *260 Board ("Board"). After a hearing, the Board rendered a decision reducing plaintiff's suspension to one day. Thereafter, on August 13, 1999, plaintiff filed a suit for judicial review of the Board's decision in the district court. On March 8, 2000, the district court signed a judgment upholding the decision of the Board. From that judgment, plaintiff appeals and assigns the following errors:
1. The Municipal Fire and Police Civil Service Board erred in excluding certain evidence which was made the subject of a proffer by Robert D. McGehee at the hearing.
2. The Municipal Fire and Police Civil Service Board erred in upholding the disciplinary action taken against Robert D. McGehee by Chief Greg Phares.
3. The Municipal Fire and Police Civil Service Board erred in affirming the action of the appointing authority because the evidence was not conclusive and the action was not taken in good faith for cause.
4. The District Court erred in affirming the decision of the Municipal Fire and Police Civil Service Board.

APPELLATE JURISDICTION
It is the duty of the court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863, p. 3 (La.App. 1st Cir.12/20/00), 774 So.2d 1193, 1197 (on rehearing), writ granted, XXXX-XXXX (La.6/1/01), 793 So.2d 188.
Although LSA-R.S. 33:2501(E) gives a classified employee a right to an appeal from a disciplinary action to the appropriate district court, there is no provision in the Municipal Fire and Police Civil Service Law, LSA-R.S. 33:2471 et seq., that allows a second appeal from the district court's judgment to the court of appeal.[2] Where there is no constitutional or statutory right to an appeal from an appellate review by the district court, only supervisory review in this court is available to the litigant. See Lightfoot v. Stalder, 00-1120, p. 6 (La.App. 1st Cir.6/22/01), 808 So.2d 710.
LSA-Const. Art. V, Section 10(A) gives an appellate court jurisdiction over all civil matters. Thus, we must determine whether the action at issue qualifies as a "civil matter" as defined by the Louisiana Supreme Court in In the Matter of American Waste, 588 So.2d 367 (La. 1991), and Moore v. Roemer, 567 So.2d 75 (La.1990). In American Waste and Moore v. Roemer, the supreme court indicated that "civil matters" are those that have been traditionally adjudicated in the district courts, such as the adjudication of disputes between private parties resulting in money judgments affecting only those parties. "Civil matters" are those where private citizens have historically had the independent right to bring suit in the district court for relief. American Waste, *261 588 So.2d at 372. "Civil matters" generally do not include those where the government is a party or in matters of public law. Moore v. Roemer, 567 So.2d at 81.[3] (See Pope v. State, 99-2559, p. 11, n. 14 (La.6/29/01), 792 So.2d 713, 719 n. 14, wherein the Louisiana Supreme Court reserved for another day the discussion of what actions constitute matters of public law.) Nevertheless, it is well settled that a claim of deprivation of a constitutionally protected right is a traditional civil matter.
LSA-Const. Art. X, § 8 provides that, "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." This provision was cited by the court in Murray v. Department of Revenue and Taxation, 504 So.2d 561, 564 (La.App. 1st Cir.1986), writs denied, 504 So.2d 880, 882, 883 (La.1987), in holding, "this is enough to create a property right in employment with the State as it creates a definable and defensible interest in continued employment."
However, the classified city civil service established by the Louisiana Constitution extends only to those cities having a population over 400,000 or whose voters have elected to opt into the system. See LSA-Const. Art. X, § 1 and § 14. Further, firemen and policemen, in any municipality[4] having a population greater than 13,000 but fewer than 400,000 and operating a regularly paid fire and municipal police department or in any parish or fire protection district operating a regularly paid fire department, are expressly excluded from a city civil service system. LSA-Const. Art. X, § 19.[5] Nonetheless, the statutory provisions applicable to fire and police civil service[6] also provide for removal or disciplinary action only for certain enumerated causes. LSA-R.S. 33:2500. Therefore, the rationale of Murray v. Department of Revenue and Taxation is equally applicable to fire and police civil service, and the continued employment by those civil servants is likewise a constitutionally protected property right. This conclusion is supported by the jurisprudence.
In Faught v. City of Alexandria, 560 So.2d 671, 674 (La.App. 3rd Cir.1990), writ denied, 565 So.2d 447 (La.1990), the court, reviewing a suspension of a police officer, held that a property right is involved where an employee has been disciplined by suspension although not necessarily significant enough to require a pre-suspension hearing (post-suspension hearing held sufficient), citing the Supreme Court in Bell v. DHHR, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986). The Bell court held that LSA-Const. Art. X, § 8 does not apply *262 to a job re-assignment or reallocation, but only to a disciplinary action. The Bell court stated, "In essence, civil service employees are now only granted the right to pre-deprivation notice in writing and a hearing in disciplinary actions." 483 So.2d at 948. In Ayio v. Parish of West Baton Rouge School Board, 569 So.2d 234, 236-37 (La.App. 1st Cir.1990), this court reviewed a suspension and applied constitutional standards to conclude a property right was involved and the employee was entitled to notice and a pre-suspension opportunity to be heard. The Ayio court emphasized the severity of depriving a person of income.[7] See also Greenleaf v. DHH, Metropolitan Developmental Center, 594 So.2d 418 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992).
The present case involves the one-day suspension of a police officer from his duties. Under the jurisprudence discussed above, the suspension constitutes a property interest, albeit a de minimis one. Thus, we conclude this court has appellate jurisdiction in this matter and will consider the merits of the appeal.

DISCIPLINARY ACTION
Sergeant McGehee was suspended for violations of BRPD's Policies and Procedures Manual Disciplinary Code, Section XII, "Disciplinary Articles," subsections 0:0, 2:10, 3:14, and 3:23,[8] as well as, BRPD General Order Number 140, "Harassment,"[9] and LSA-R.S. 33:2500(A)(1), (3) *263 and (5).[10]
Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the Board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). The Board may, if the evidence is conclusive, affirm the action of the appointing authority. If it finds that the action was not taken in good faith for cause, the Board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the Board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The Board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period. LSA-R.S. 33:2501(C)(1). The appointing authority must prove its case by a preponderance of the evidence. Shields v. City of Shreveport, 579 So.2d 961, 964 (La.1991); Jordan v. City of Baton Rouge, 93-2125, p. 4 (La.App. 1st Cir.3/10/95), 652 So.2d 701, 704.
Any employee under classified service and any appointing authority may appeal from any decision of the Board, or from any action taken by the Board that is prejudicial to the employee or appointing *264 authority, directly to the district court. The district court shall hear the matter in a summary manner and the hearing shall be confined to the determination of whether the decision made by the Board was made in good faith for cause. LSA-R.S. 33:2501(E). A Board's findings of fact are entitled to the same weight as those made by a trial court, and are not to be overturned absent manifest error. Shields v. City of Shreveport, 565 So.2d 473, 480 (La. App. 2d Cir.1990), affirmed, 579 So.2d 961 (La.1991).
The testimony presented to the Board reflects that in 1998, Corporal Pamela Anderson was assigned to the Third District as a uniform patrol officer. Her immediate supervisor was Sergeant Robert McGehee. Corporal Anderson testified that in early 1998, Sergeant McGehee called her outside of the station, and in the presence of Lieutenant Stephen Chaney, told her a joke, the punch line of which commented on her breasts. Sergeant McGehee testified that the punch line of his joke referred to her "boots."
BRPD Chief Greg Phares testified that following an investigation and pre-disciplinary hearing, he found Corporal Anderson's statements credible and Sergeant McGehee's statements to be untruthful. Consequently, Chief Phares issued Sergeant McGehee a three-day suspension for conduct unbecoming an officer, sexual harassment, and untruthfulness. Although the Board did not issue written reasons for its ruling, implicit in its decision upholding the suspension, though reducing its duration, is the failure to find error in Chief Phares' findings of fact. After a thorough examination of the record, we are likewise unable to find manifest error in these factual findings.
Sergeant McGehee contends that his suspension was in error for a number of reasons, which can be summarized as follows: (1) only a single infraction constituted the basis for the action; (2) he had not been informed that his actions were unwelcome and offensive; and, (3) the accusations were retaliatory. We find no merit in these arguments.
Although BRPD General Order Number 140 requires employees encountering harassment to tell the person that their actions are unwelcome and offensive, such a declaration is not a prerequisite to disciplinary action. In fact, the general order states that the "incident(s)" shall be reported to a supervisor so that "appropriate investigative and disciplinary measures may be initiated." Obviously, in using "incident(s)" rather than "incidents," it was intended that only one incident is sufficient to be actionable. If a declaration to the offending party were a prerequisite to the referenced "investigative and disciplinary measures," the harassment policy would, in effect, give employees free rein to commit one infraction without impunity regardless of the severity of the infraction. We do not believe such a scenario was intended in the enactment of these rules.
Sergeant McGehee further argues that Corporal Anderson's behavior on the job, in readily discussing intimate topics and in engaging in the telling of obscene jokes on prior occasions, demonstrates her receptiveness rather than objection to such repartee. He cites as error the Board's refusal to hear evidence of Corporal Anderson's behavior of this nature. "Sexual harassment" is defined in the BRPD Disciplinary Articles, subsection 3:14 as "unwanted sexual advances or other verbal or physical conduct of a sexual nature." In BRPD General Order Number 140, sexual harassment is defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature...." The wording of *265 these provisions leaves some room for doubt as to whether "unwanted" or "unwelcome" refer only to "sexual advances" or to "other verbal or physical conduct of a sexual nature," as well. However, we find it unnecessary to resolve this ambiguity, in the instant case, because we find the disciplinary action sustainable on the basis of the finding of untruthfulness alone. Thus, any error in the exclusion of evidence of Corporal Anderson's misconduct was harmless.
Unquestionably, Sergeant McGehee was found guilty of failing to tell the truth regarding the nature of the comments directed toward Corporal Anderson. Without considering the other alleged rule violations, we find the one-day suspension properly imposed for this individual infraction. In Sholes v. Department of Police, 97-1768, p. 1 (La.App. 4th Cir.2/25/98), 707 So.2d 1055, 1056, failing to tell the truth, regarding securing a building where an alarm had sounded, resulted in a ten-day suspension for a police officer. In City of Kenner Fire Department v. Kenner Municipal Fire and Police Civil Service Board, 99-86, p. 6 (La.App. 5th Cir.6/1/99), 738 So.2d 114, 117, a firefighter who called in sick and then went to work at a part-time job was found to deserve a suspension of more than ten days. In Macelli v. New Orleans Police Department, 98-1441, p. 5 (La.App. 4th Cir.10/21/98), 720 So.2d 754, 757, writ denied, 98-2906 (La.1/15/99), 736 So.2d 211, a police officer received a suspension of one hundred days for failing to tell the truth, coupled with past infractions. In Smith v. New Orleans Police Department, 99-0024, p. 1 (La.App. 4th Cir.9/22/99), 743 So.2d 834, 836, writ denied, 99-3242 (La.1/14/00), 753 So.2d 221, failing to tell the truth, coupled with other infractions, led to the termination of employment of a police officer. Consequently, we believe the one-day suspension received by Sergeant McGehee was correct.
Having found the suspension supportable on the basis of dishonesty alone, we find it unnecessary to address plaintiff's other contentions and pretermit his remaining assignments of error.

CONCLUSION
For the reasons assigned herein, we affirm the judgment of the district court upholding the one-day suspension of Robert D. McGehee. All costs of this appeal are to be paid by plaintiff/appellant herein.
AFFIRMED.
NOTES
[1] The Honorable Fred C. Sexton, Jr., Judge (retired), Second Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Where the Louisiana Administrative Procedure Act (LAPA) is applicable, LSA-R.S. 49:965 provides for review by "[a]n aggrieved party ... of any final judgment of the district court by appeal to the appropriate circuit court of appeal." However, the LAPA extends only to review of certain activities of an "agency" and excludes from its definition of agency "any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof." LSA-R.S. 49:951(2). "Political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions. LSA-Const. Art. VI, § 44(2). Therefore, LSA-R.S. 49:965 can not provide a basis for appeal to this court in this case.
[3] The Moore v. Roemer court determined that workers' compensation matters did fit the definition of a traditional "civil matter;" however, the American Waste court determined that private citizens had never had the right to bring civil actions in the courts to force the issuance of waste disposal or water discharge permits, and thus, environmental permitting matters did not constitute "civil matters" over which original subject matter jurisdiction was vested in the district courts. American Waste, 588 So.2d at 372-73.
[4] "Municipality" means an incorporated city, town, or village. LSA-Const. Art. VI, § 44(3).
[5] But see Cannon v. City of Hammond, 97-2660, pp. 3-4 (La.App. 1st Cir.12/28/98), 727 So.2d 570, 572.
[6] LSA-R.S. 33:2471-2508 are in the section entitled "Part II. Fire and Police Civil Service Law for Municipalities between 13,000 and 250,000," but apply to municipalities having a population between 250,000 and 500,000, as well. See LSA-R.S. 33:2591. See also LSA-Const. 1921, Art. XIV, § 15.1 and LSA-Const. 1974, Art. X, § 18.
[7] In the instant case, the record of the Board does not reflect whether Sergeant McGehee's suspension was without pay; however, in his petition for judicial review and oral argument before the district court, as well as, in brief to this court, Sergeant McGehee maintains that his suspension was without pay.
[8] BRPD's Policies and Procedures Manual Disciplinary Code, Section XII, "Disciplinary Articles," subsections 0:0, 2:10, 3:14, and 3:23 were quoted in the suspension letter as follows:

0:0 Violators Subject to Disciplinary Action
All members of the Baton Rouge Police Department, regardless of rank or assignment, are subject to disciplinary action for any violation of the rules, procedures or department policy contained herein or in other procedural manuals issued by the Department. It is not necessary [that] the violation be intentional, but may be by omission or failure.
2:10 Conduct Unbecoming an Officer
Every member of the Department, whether on or off duty, in an official or unofficial capacity, must conduct himself at all times in such a manner as to set a good example for all others with whom he may come in contact. He shall in no way, through actions or neglect, bring dishonor or disgrace upon himself or the Baton Rouge Police Department.
3:14 Sexual Harassment
No employee shall solicit sexual favors, commit unwanted sexual advances or other verbal or physical conduct of a sexual nature, ridicule, mock, deride, belittle, or harass any person during the course of his/her duties as a member of the Baton Rouge Police Department.
3:23 Truthfulness
Every member of the Department is required to be truthful except while conducting investigations that require surreptitiousness.
[9] BRPD General Order Number 140, "Harassment," effective January 1, 1997, provides, in pertinent part:

I. Prohibited Activity
A. No employee shall either explicitly or implicitly solicit sexual favors, ridicule, mock, deride, or belittle any person during the course of their duties as members of the Baton Rouge Police Department.
. . . .
C. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:
1. Submission to such conduct is made either explicitly or implicitly a term or condition of employment or in exchange for acts of omission or commission on the part of members of the department; or
2 Submission to or rejection of such conduct by an employee is used as the basis for employment decisions affecting the employee; or
3. Such conduct has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile, or offensive working environment.
II. Employee's Responsibilities
A. Each supervisor shall be responsible for preventing acts of harassment.
. . .
C. Each employee of this Department is responsible for assisting in the prevention of harassment through the following acts:
1. Refraining from participation in, or encouragement of, actions that could be perceived as harassment;
. . . .
D. Failure to take action to stop known harassment shall be grounds for discipline.
III. Complaint Procedures
A. Employees encountering harassment shall tell the person in unequivocal terms that their actions are unwelcome and offensive. The employee shall document all incidents of harassment in order to provide the fullest basis for investigation.
B. Any employee who believes that he/ or she is being harassed shall report the incident(s) to his/ or her supervisor as soon as possible so that steps may be taken to protect the employee from further harassment, and appropriate investigative and disciplinary measures may be initiated.
. . . .
[10] LSA-R.S. 33:2500(A)(1), (3), and (5) provide:

A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
. . . .
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
. . . .
(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.